We move to case number five. Case number four will be decided on the briefs. Case number five, Liu v. Barr. Good morning. Just wait a minute until people. Good morning, your honors. My name is Police Chief. Counsel, if you wait, wait until people move in and out of the courtroom. Good morning, your honors. My name is Peng Chien Ma on behalf of the petitioner. Your honors, today we're here to ask this court to overturn the decision of the Board of Immigration Appeals and that of the Immigration Court, denying the petitioner's application for asylum. The denial of relief was based on some doubts in the minds of the immigration judge, but the doubt arose from certain discrepancies in the testimony of the merit hearing, but we ask this court to distinguish the issue of credibility and the issue of doubt because in this kind of cases, the evidence rule, the burden of proof does not require the petitioner to prove his case beyond the doubt. It is reasonable that there might be doubt, but we have to ask what kind of doubts those are. In this case, the perceived discrepancies in the testimony of the petitioner were on his confusion on certain dates. I believe this court recognizes that as a matter of human nature or the faculty, the limitation of the faculties of the human faculties, people tend to... We use that language, counsel, in the Koji Kerry opinion, which I think you rely upon pretty heavily, but the discrepancies here are far greater and on issues and events that are absolutely central to your client's claim of asylum. In Koji Kerry, they dealt in essence with tangential issues and minor discrepancies in time. But your honor, we have to understand the petitioner was testifying to facts and events that were not supposed to have been part of his normal life. People tend to forget about circumstances around events that were not part of their human life. Mr. Maher, I tend to agree with you on a part of your argument, and that is with respect to some of the particulars of the church around Chicago and different aspects of the Catholic faith and what have you. I think your point's well taken there. But to go back to what Judge Hamilton is asking, some of these discrepancies here are in no way minor. Let me give you two examples and maybe you can address them. First, he testified to three different dates on which he was arrested in China, and those dates are not close to one another. That's point one. And point two is he testified that when the Chinese police arrested him in the past and he was asked, what did they want to know from you? He said, not much in his testimony. But the written application has a lot of detail in it, does it not? Including, they wanted to know so much that they actually physically beat him. So we're not talking about minor points or things that might just slip your mind. I can't remember if it was January or February. Your Honor, we do not know what was in his mind when he testified to the dates, to the details of... But we don't have to know what was in his mind, right? We have a record where we can compare the testimony with the written application. And we see, at least with the two examples I just gave you, we see pretty serious, pretty material differences. But Your Honor, the quality of a person's testimony sometimes depends on the personal experience, social experience of that individual, the educational level of that individual, and also during the testimony, the atmosphere of the testimony. And also, we have to allow the witnesses to correct themselves during the testimony, and he effectively corrected his mistakes. And in the end, we have a record showing that he confirmed this fact, he confirmed that fact, he just corrected that fact, in the end, we have a record of a strict record of the facts that qualifying him for relief. But in this case, it appears the judge just had some doubts. But the doubts we have to, in this kind of cases, we have mere doubts, should not disqualify a petitioner or an applicant for relief. The, in this kind of cases, the petitioner, the individual, should be given the benefit of the doubt. Are you saying that the immigration judge misapplied the law? Applied the wrong burden of proof? I don't see any evidence. I think so. That's because the, the differences, the different people might perceive the facts differently, but the dates, and also the, the judge had, had an issue with the corroborative evidence, for instance, the letter from his wife, confirming what happened to him in China. And also, not only that, he had two letters from, from his wife, two individuals, confirming the fact of his trouble in China. But the judge had issues with the, with the, at least the two letters, saying that the letters were not detailed enough. We don't know, because of the, the letters from people abroad, how can we know what kind of the written, the writing style of that person, as long as it confirms the fact of his past persecution, that's enough. We don't know, we don't have a witness to testify to, to what he says in his letter. And his wife, the judge also had an issue with the letter from his wife, saying that although this letter is detailed, but she did not talk about the time of his conversion to Christianity. And that kind of thing. But at that time, they were not married yet. She was converted to the religion in South Korea. Let me ask you a question about that. Okay. Yeah. What does the record show regarding whether she made the trip? I know they weren't married. You're, you've been clear on that point in time. Okay. What does the record show though, about whether she made the trip with him to South Korea? Did she go with him? No. I don't, I don't think that. Is that in the record? And if so, where? Is that in the record? No, I don't think she traveled with him to South Korea. They got married when she returned, when he returned from South Korea. Right. So it's not reasonable to require her to give details on what happened in South Korea while they were not married, while she was not with him at that time. But the detailed letter from his wife, the judge recognized that the weight of the letter, but simply because she did not give unrelated details, she disregarded the letter, the doubt in the mind of the immigration judge is not supported by the totality of the evidence in the record. Although, Your Honor, you mentioned that the, some discrepancies and material, I don't believe, I respectfully disagree with the characterization of the, of the evidence in this record. And we ask this court to overturn the decision and give the petitioner the benefit of the doubt expressed by the immigration judge. Your Honor, if you don't have any further questions, I'm done. Thank you very much. Thank you. Good morning. May it please the court. This is Dana Camilleri for the Attorney General. Liu failed to present a consistent timeline and narrative surrounding his supposed introduction of Christianity in South Korea, his single arrest in China, and his alleged practice of Christianity in the United States. These inconsistencies properly form the basis of adverse credibility determination. Moreover, when confronted with these material inconsistencies, he provided more inconsistent statements, contradicted his prior testimony, or he became completely unresponsive as noted by the immigration judge and as evidenced by the merits hearing testimony. He also did not offer any plausible explanations for the changing of his narratives, the dates for these very important events. I think as the IJ noted in a footnote, it's hard to tell what happened whatsoever because every step of the way, there are inconsistencies and contradictions. So accordingly, we ask that this court not disturb the adverse credibility determination. Is there any realistic prospect of removal at this point? Is China taking removals from the United States at this point? I believe that there are some. I'm not prepared to give you a firm answer on that. I apologize. Judge Hamilton asked your adversary about the Kojikari case. And one difference that I want you just to react to is, in Kojikari, the immigration judge in the court found some fault with this, was troubled by the Kojikari there provided more detail in the live portion of the testimony than in the written application materials. It's the opposite here, correct? In other words, the application paperwork had various details. Now, to be sure, as you said, it turned out to be inconsistent with a lot of the parts of the testimony, but the testimony was quite scant, was it not? In this case, yes. Compared to his written explanation. Is that a distinction that you believe should matter? Not necessarily. I think that there are a lot of easy distinctions between this case and Kojikari in terms of the timeline and how many dates he was off and his explanation, which this court accepted in Kojikari, about his asylum application and his communication with his attorney, none of which is present in this case. I think that actually, Santosh Baikov, which followed Kojikari, is more applicable to the current situation. Are there any other questions for me? Thank you all. I'll rest on the briefs. I got one quick question. Do you know whether the record shows his wife went with him to South Korea, or fiancee, or whatever they were? The record's silent on that. I believe from his narrative that he was there alone. That's what it... Thank you. Thank you, counsel. Thanks to both counsel and the cases taken under advisement.